**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.            ) | **CRIMINAL ACTION FILE** |
| ) | |
| **KAYLA DENISE BODIFORD,**   ) | **NO. 1:10-CR-395-TCB-AJB** |
| ) | |
| **Defendant.**        ) | |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Before the Court is Defendant Kayla Denise Bodiford's motion to suppress statements, [Doc. 28]. The Court held an evidentiary hearing, (hereinafter "T__"). Defendant elected not to file a post-hearing brief. [*See* Dkt.]. For the reasons that follow, it is **RECOMMENDED** that the motion be **DENIED**.

*FACTS*

On August 12, 2010, Atlanta Police Department narcotics officers as well as federal law enforcement officers were executing a search warrant at 220 26th Street, Apartment 1307, in Atlanta. T5-6, 21. Law enforcement had previously conducted two undercover purchases of narcotics at that location, and were seeking to seize other drugs in executing the warrant and arrest the occupant of the residence, Thaddeus LaFavre. T6. The warrant execution resulted in the seizure of approximately 5 ounces

of methamphetamine, some cocaine and prescription pills, and LaFavre was arrested. *Id.* Another male (LaFavre's roommate) and two females also were detained. T35. LaFavre was *Mirandized* and agreed to cooperate by ordering additional drugs from his suppliers. T7-8. However, because he owed money to some of his suppliers, they would not agree to deliver any drugs to him. T8. LaFavre offered to call another person, named "Riley," to whom LaFavre did not owe money. T8. LaFavre reported that he had purchased methamphetamine from Riley in the past on numerous occasions, and that the turnaround time for delivery of the drugs after making the call to Riley was brief. T26.

At about 11:00 pm, Lafavre called Riley from his own cell phone and another officer listened to the ensuing conversation over the speaker. T28. Riley agreed to deliver to LaFavre's apartment 8 ounces of methamphetamine. T8. LaFavre instructed Riley to call him when he arrived at the front gate leading to the parking garage of the apartment complex in which LaFavre resided. T8, 28. There was no indication from the LaFavre-Riley telephone conversation that another person was present on Riley's end or that Riley would be accompanied to LaFavre's by another person. T28.

Law enforcement set up surveillance inside and outside LaFavre's apartment. T29. At approximately 11:15 pm, LaFavre received a phone call from Riley, later

2

identified as William Putnam, who stated that he was at the complex.  Riley was observed parking in the garage.  Law enforcement saw Putnam exit the vehicle (an older black Toyota Camry with rims which LaFavre had earlier described) with a female later identified as Defendant.  T30.  They proceeded to Apartment 1307, where they knocked on the door.  T9.  Putnam was carrying a black satchel and his hand was inside of it.  T10.

The officers opened the door and put Putnam on the ground.  Defendant was pushed back to the left of the entrance and detained.  Neither Putnam nor Defendant resisted.  T10-11.  They both were handcuffed.  T33.  They likely were searched for weapons.  T33.  Putnam was picked up and taken into the apartment, with Bodiford moved closely behind him into the residence.  Approximately 5 to 6 feet inside the apartment, at the kitchen island area, Putnam's satchel was removed from him.  Inside was a black semiautomatic handgun and a white container with a blue lid.  T12.  As officers were removing the firearm from the satchel, Putnam stated that the firearm was hers, to which Defendant replied, "It is registered to me."  T12.  At the time, officers were not asking either Putnam nor Bodiford any questions because they were more interested in removing and securing the satchel from Putnam.  T12.

3

Putnam and Bodiford were moved over to the couch and told to sit down. T12-13. An officer was seated in a chair across the room from them. T13. There were 6 to 8 officers in the apartment at the time. T16. APD Officer Davidson removed the handgun from the satchel, cleared it, and placed it on the kitchen counter. He then began to remove the plastic container (which appeared to be a wipes dispenser) from the satchel. T13-14. As he was lifting it he could tell it contained something other than wipes because it made a crunching sound. T14-15. When Davidson nearly had lifted the container clear of the satchel, Bodiford stated, "The meth is all mine." T15. She was about 10-12 feet from Davidson and had a clear view of what Davidson was doing at the kitchen island. T15. Putnam turned to her and told her to "shish" and to "shut up." T15. No officer had posed a question to her before she made that statement. Approximately 5 to 6 minutes had elapsed from the time the officers heard the knock on the door to Davidson's removal of the blue-topped container from the satchel. T17.

After Bodiford made the statement, Davidson opened the wipes container and located a clear plastic freezer bag containing methamphetamine. T16.

The officers were dressed in their raid uniforms. T17. Although they were armed, the officers had the element of surprise over Putnam and Bodiford when they arrived, so that they did not need to draw their weapons. T18. Once Bodiford was

4

placed on the couch, no officer stood over. T16. No officer pointed a weapon at her, nor did any officer yell at her. T18. She was not questioned by law enforcement that night. T18, 40.[1]

Bodiford was completely compliant and did not make any requests. T18. Even though some of the other detainees used the restroom, and a female officer was on the scene, Bodiford did not ask to use the restroom. T18.

While seated on the couch, Bodiford appeared slightly upset, but not hysterical. She and Putnam talked to each other, and every once in awhile, they kissed. To Davidson, Bodiford appeared more concerned with Putnam than what the officers were doing. T17.

*Discussion*

The government bears the burden of showing that a defendant's in-custody statements were obtained in compliance with the dictates of *Miranda v. Arizona*, 384 U.S. 436 (1966), and were otherwise voluntary. *Missouri v. Seibert*, 542 U.S. 600,

---

[1] Although the officers' initial intention was to prosecute the arrestees in state court, Putnam, while seated on the couch, began stating, "What is it you guys want? You want a thousand pounds? You want five hundred pounds?" T21. Since these amounts were above the APD's operational capabilities, Davidson called for the DEA agents on the scene to come into the apartment. After a DEA agent spoke separately with Putnam, the decision was made to prosecute the case in federal court. T21-22.

5

AO 72A
(Rev.8/8
2)

608 n.1 (2004); *Colorado v. Connelly*, 479 U.S. 156, 168 (1986); *Miranda*, 384 U.S. at 475.  However, the defendant bears the burden of establishing that he was in custody and that his statements were made in response to government questioning.  *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1978) (holding that "if a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination.")[2]; *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984), *overruled on other grounds, United States v. Bengivenga*, 845 F.2d 593 (5th Cir. 1988).  Thus, for example, spontaneous statements made before *Miranda* warnings are given are not required to be suppressed.  *Miranda*, 384 U.S. at 478 ("Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment."); *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991) (recognizing that when there is no police questioning, "[v]oluntary and spontaneous comments . . . are admissible evidence"); *United States v. Glen-Archila*, 677 F.2d 809

---

[2]   In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981.

6

(11th Cir. 1982); *United States v. Savell*, 546 F.2d 43, 46 (5th Cir. 1977) (holding that *Miranda* rule "does not reach a situation . . . where the statements were unsolicited, spontaneous and freely made prior to any attempted interrogation"). The Supreme Court has defined "interrogation" as "express questioning" initiated by police officers or its "functional equivalent," namely "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Although Bodiford was in the custody of the police, her statements about the handgun and methamphetamine being hers were not "the product of [an] interrogation." *Innis*, 446 U.S. at 299. Each statement "was totally voluntary and clearly outside the protective umbrella of *Miranda*." *United States v. Castro*, 723 F.2d 1527, 1530 (11th Cir. 1984); *see also United States. v. Sanders*, 315 Fed. Appx. 819, 824 (11th Cir. 2009) (holding that defendant's statement claiming ownership of cocaine base, firearm, and ammunition was voluntary and spontaneous). The police took no action or used any words that were reasonably likely to elicit an incriminating response from her. In fact, the record demonstrates that the only words spoken to her by police prior to her spontaneous statements were the instruction to sit down on the couch.

7

Moreover, nothing in the evidence established that the circumstances were coercive so as to render her statements involuntary.[3]  Rather, Bodiford was cooperative with police.  *See United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994) (describing coercive conduct); *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession.") (citation omitted).  Here, at the time of Bodiford's spontaneous statement about the firearm, although she was handcuffed and being led into LaFavre's apartment, there is no indication that she was manhandled or abused.  She was not addressed or otherwise spoken to by the police up to that point.  While she was pushed aside as officers initially restrained Putnam, there is no indication in the record that the force used to move her aside was excessive, prolonged, more than necessary to move her out of the way, or caused her injury.

As to her statement about the methamphetamine, again although handcuffed, she was seated on a couch next to Putnam.  No officer closely guarded her.  She and

---

[3]  The Court recognizes that in any custodial situation, there is present a degree of duress.  The question is whether the officers used coercive tactics or took unlawful advantage of the arrest/custodial situation to obtain the statements.  *See United States v. Jones*, 475 F.2d 723, 730 (5th Cir. 1973) (applying principle in context of consent).

8

Putnam spoke to one another and kissed without interference from law enforcement. Accordingly, the undersigned concludes that the spontaneous, unprompted statements also were voluntary.

*Conclusion*

Based on the foregoing reasoning, the undersigned **RECOMMENDS** that Bodiford's motion to suppress statements, [Doc. 28], be **DENIED**. The Court has now ruled upon all pretrial motions and has not been advised of any problems preventing scheduling of trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED AND CERTIFIED**, this the 22d day of February, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**